## GEORGE W. LUFT CO., Inc., v. ZANDE COSMETIC CO., Inc., et al.

### No. 155.

Circuit Court of Appeals, Second Circuit.

May 9, 1944.

538

Frederick L. Kane, of New York City (Maurice J. Moore, of New York City, of counsel), for appellants.

Breed, Abbott & Morgan, of New York City (Charles H. Tuttle and Gerald J. Craugh, both of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This is a suit under the Federal Trade-Mark Act, 15 U.S.C.A. § 81 et seq., for infringement of the plaintiff's registered trade-mark "Tangee", and for unfair competition. All of the parties are residents of the state of New York. Both the plaintiff and the corporate defendant, which is owned and dominated by the individual defendant, are engaged in the business of manufacturing and selling cosmetics, principally lipsticks. In an opinion reported in 48 F. Supp. 602, the district court held that the use by the defendants of the word "Zande" as a trade-mark and as part of the corporate name infringes the plaintiff's trade-mark "Tangee" and also constitutes unfair competition. An interlocutory decree was entered enjoining such use and directing a reference to a master for an accounting of profits and damages sustained by the plaintiff since June 9, 1937. The defendants have appealed, claiming that the court was in error in the following respects: (1) in finding that the plaintiff had established a valid title to the trade-mark registrations enumerated in its complaint; (2) in finding that the word "Zande" is confusingly similar to the trade-mark "Tangee"; (3) in overruling the defense of laches; (4) in excluding evidence of foreign trade-mark proceedings in which registration of the mark "Zande" was granted to the corporate appellant; and (5) in failing to limit the injunction and accounting to the appellants' business in the United States and failing to limit the accounting to a period starting with the commencement of this action in March 1941.

█ (1) In 1920 the trade-mark "Tangee" was adopted by the original George W. Luft Co., plaintiff's predecessor, which will be referred to as the old company. The old company obtained five registrations of its trade-mark between the years 1924 and 1936. In October 1937 by vote of its directors and stockholders it was dissolved, the certificate of dissolution being duly filed on October 13th. Prior to dissolution it had contracted to transfer its assets to the plaintiff and by a written instrument dated October 20, 1937, it assigned to the plaintiff all interest in its registered trade-marks. It is the contention of the appellants that section 105 of the New York Stock Corporation Law, Consol. Laws, c. 59, makes this assignment invalid because it was executed by the officers of the dissolved corporation instead of by the directors. The unsoundness of this contention is demonstrated by Asphalt Paving & Construction Co. v. City of New York, 149 App. Div. 622, 134 N.Y.S. 433.

█ (2) Also without merit is the claim that there is no confusing similarity between the words "Zande" and "Tangee". The appellants stress the absence of proof of actual confusion or deception of purchasers, but such proof is unnecessary where the similarity of names is such as to make confusion likely. The district court found that there was such similarity and so did the Patent Office when it refused registration of the trade-mark "Zande" in June 1937. On this branch of the case we see no necessity for adding to what was said in the opinion below.

█ (3) The appellants urge that the plaintiff has been guilty of such laches as to preclude the granting of an injunction and accounting. They began selling merchandise under the name "Zande" early in 1935. The old company promptly learned of the appellants' use of this name, wrote a letter objecting to it and filed notice of opposition to the Zande Company's application for registration of "Zande" as a trade-mark; but neither the old company nor the plaintiff brought any action for an injunction or for damages until the present suit was commenced in March 1941. The plaintiff cannot be charged with delay during the pendency of the old company's opposition proceeding in the patent office. Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972, 974; Noll v. Rinex Laboratories Co., D.C., 25 F.Supp. 239, 242, affirmed on the opinion below in 6 Cir., 99 F.2d 1013. This opposition was decided adversely to the applicant on June 9, 1937, and no appeal was taken. After the plaintiff succeeded to the old company's trade-mark it discovered in October 1939 that the Kress Company was

offering the appellants' products for sale and by a protest caused it to cease handling them. No other instance of the sale of "Zande" products in the United States came to the attention of the plaintiff until the summer of 1940 and again protest was made to the dealer. In several foreign countries the plaintiff or its predecessor has litigated with the Zande Company the right of the latter to register its trade-mark. The district court found that the plaintiff has been active in its opposition to the defendants' use of the name "Zande". The defense of laches was correctly overruled.

█ The problems raised by the appellants' remaining contentions are more difficult. Points (4) and (5) are closely related and may be considered together. The defendants offered in evidence, as exhibits W1-W18, certified copies (with translations thereof) of proceedings in foreign countries wherein they had obtained, sometimes ex parte and sometimes after contest with the plaintiff, registration of "Zande" as a trade-mark. Upon objection by the plaintiff decision as to the admissibility of this evidence was reserved. In his opinion the district judge excluded it as irrelevant, citing as authority City of Carlsbad v. Kutnow, C.C., 68 F. 794, affirmed, 2 Cir., 71 F. 167. That was a suit in equity brought by the city of Carlsbad and others to enjoin the defendants from infringing a common law trade-mark, consisting of the words "Carlsbad Sprudel Salts", by selling in New York under the designation "Kutnow's Improved Effervescent Carlsbad Powder" an article in no way derived from the well-known Carlsbad waters. The defendants introduced in evidence a decision of the high court of chancery in England granting to them, against the opposition of the city of Carlsbad, the right to register as a trade-mark the words alleged to be an infringement. This was held to be irrelevant and inadmissible. It must be noticed, however, that the purpose of introducing the English registration was to prove that the defendants were privileged to use the word "Carlsbad" on sales in the United States. On this issue a foreign trade-mark was rightly held irrelevant, for clearly the English law could not confer a privilege to do something in this country which our courts were bound to recognize. See United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 100, 39 S.Ct. 48, 63 L.Ed. 141; Baglin v. Cusenier Co., 221 U.S. 580, 594-597, 31 S.Ct. 669, 55 L.Ed. 863; Ingenohl v. Walter E.

Olsen & Co., 273 U.S. 541, 544, 47 S.Ct. 451, 71 L.Ed. 762. We do not think that the Carlsbad case controls the case at bar. Here the purpose of offering the foreign registrations was not to establish the privilege of using the name "Zande" in the United States but to prove that the defendants might lawfully use it within the foreign country which granted the registration. If that fact is relevant, the exhibits are competent evidence to prove it in conjunction with the testimony of Mr. Gleason who testified as an expert in the trade-mark law of the foreign countries concerned. For example, with respect to Brazil: exhibit W-1 is a trade-mark registration granted to the Zande company over the opposition of the Luft company; and W-2 is a decision by a Brazilian court dismissing an action by the Luft company to annul such registration. Mr. Gleason testified that by the Brazilian law registration of a trade-mark decides the right to use the mark as well as the right to register it; that an earlier user may attack a registration within five years after its grant but at the end of that period the registrant is the final owner. Exhibits W1-18 seem to prove that the mark "Zande" has been registered over opposition by the Luft Company in six other countries as well as Brazil, and has been registered without opposition in three additional countries. Exhibits 29, 30 and 36 show that the plaintiff prevailed against "Zande" in contested proceedings in Cuba, Chile and Nicaragua. The appellants urge—rightly, we think—that the fact that in certain foreign countries they are entitled to sell their goods under the name of "Zande" is relevant to the determination of questions arising in the present suit, namely, whether they should be enjoined from selling in such countries or from shipping merchandise for sale there, and whether their accounting must include profits and damages from such sources. This brings us directly to the contention that the scope of the decree appealed from is too broad.

The decree is couched in the broadest possible terms. It perpetually enjoins the defendants from manufacturing, selling, transporting or advertising cosmetics bearing the trade-mark "Zande" or the corporate name "Zande Cosmetic Co., Inc.", or otherwise using such trade-mark, corporate name or any other mark or name which colorably imitates plaintiff's trade-mark "Tangee"; and it requires the defendants to account and pay to the plaintiff all profits

made by the defendants and all damages sustained by the plaintiff since June 9, 1937 by the defendants' use of the trade-mark "Zande" or other corporate or business name containing the word "Zande". Read literally this seems to preclude the defendants from doing business under the name "Zande" anywhere in the world, and to require an accounting of profits and damages on all business, domestic or foreign, since June 9, 1937. We think this too sweeping. The complaint alleges that the trade-mark "Tangee" has been and still is used extensively in interstate and foreign commerce, at first by the old company and then by the plaintiff. There is however no allegation as to the specific foreign countries in which the plaintiff or its predecessor has done business; nor do the findings of fact name such countries. The defendants are charged in the complaint with selling cosmetics under the name "Zande" in interstate and foreign commerce, but there is no allegation nor finding as to the particular foreign countries in which they have so sold. The evidence discloses that only about two per cent. of their business has been domestic, and that their total foreign sales have amounted to about $280,000. The domestic business is, of course, properly included within the decree. As to the foreign business, the evidence which the district court excluded as irrelevant bears upon a classification that we regard as relevant, as follows: (a) countries where both parties are doing business and the defendants have established their right by the local law to use the name "Zande"; (b) countries where both parties are doing business and the defendants have not established such right; and (c) countries where the defendants are doing business and the plaintiff has not proved that it has ever done business or is likely to do it.

■ In countries falling within class (a) the defendants' use of the word "Zande", either as a trade-mark or as part of the corporate name cannot constitute unfair competition with the plaintiff. Therefore they should not be restrained from doing business there in their corporate name or from using there the trade-mark "Zande". The next problem is whether equity should interfere with the defendants' activities in the United States which are exclusively concerned with such foreign markets. In support of an affirmative answer the plaintiff relies upon two cases, Vacuum Oil Co. v. Eagle Oil Co., C.C.N.J.; 154 F. 867, affirmed 3 Cir., 162 F. 671, certiorari denied 214 U.S. 515, 29 S.Ct. 696, 53 L.Ed. 1063, and Hecker H-O Co. v. Holland Food Corp., 2 Cir., 36 F.2d 767. In the Vacuum Oil case the court found a fraudulent scheme of unfair competition being carried out in essential part within its jurisdiction; a finding we obviously cannot make in the present case in so far as the appellants have won bona fide rights to use the name "Zande" abroad. In the Hecker case the plaintiff was the owner of a mark registered under the Trade-Mark Act; the defendant packaged its goods in the United States, labeled the containers with a colorable imitation of the plaintiff's mark, and shipped them from American ports to certain foreign countries. This was held to be a violation of section 16 of the Trade-Mark Act, 15 U.S.C.A. § 96, and was enjoined. The question whether section 16 would be violated if the label were affixed in the foreign countries was expressly left open. It is true that the record in the Hecker case discloses that the defendant had registered in Holland, one of the countries to which it shipped, the mark it was using, but the opinion made no reference to this fact and in sustaining jurisdiction to enjoin the acts done in the United States the court relied solely on the Vacuum Oil case. Nor does it appear from the Hecker record that registration of the mark established in the defendant by the law of Holland a right to use such mark as against the plaintiff. For the foregoing reasons the Hecker case can not be deemed a decision with respect to affixing in the United States a mark upon goods to be shipped to a country by whose law the defendant has established a right to use the mark superior to the right of the plaintiff. Section 19 of the Trade-Mark Act, 15 U.S.C.A. § 99, declares that the courts vested with jurisdiction in trademark cases "shall have power to grant injunctions, according to the course and principles of equity, to prevent the violation of any right of the owner" of a registered trade-mark, "on such terms as the court may deem reasonable." We do not see upon what "principles of equity" a court can enjoin the initiation of acts in the United States which constitute no wrong to the plaintiff in the country where they are to be consummated. Nor can we perceive upon what theory a plaintiff can recover damages for acts in the United States resulting in a sale of merchandise in a for-

eign country under a mark to which the defendant has established, over the plaintiff's opposition, a legal right of use in that country. Consequently neither the injunction nor the accounting should cover activities of the defendants, either here or abroad, concerned with sales in countries where the defendants have established rights superior to the plaintiff's in the name "Zande". What particular countries meet this test, we leave for determination by the district court.

■ Countries falling within class (b) present the converse of the principles we have been discussing. Activities in the United States which will be consummated in those countries constitute an infringement of the Trade-Mark Act and are governed by the Hecker case.

■ There remains for consideration class (c) countries where the defendants are doing business but the plaintiff has not proved that it ever has done business or is likely to do it. The Trade-Mark Act creates no new substantive rights in those who register their marks. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 324, 59 S.Ct. 191, 83 L.Ed. 195; Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 6 Cir., 119 F.2d 316, 322, reversed on other grounds 316 U.S. 203, 62 S. Ct. 1022, 86 L.Ed. 1381; Scandinavia Belting Co. v. Asbestos & Rubber Works, 2 Cir., 257 F. 937, 952, certiorari denied 250 U.S. 644, 39 S.Ct. 494, 63 L.Ed. 1186; Nims on Unfair Competition & Trade-Marks, 3rd Ed., § 223a. And it is well established that the right to a particular mark grows out of its use, not its mere adoption, and is not the subject of property except in connection with an existing business. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 412–414, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 98–100, 39 S.Ct. 48, 63 L.Ed. 141. Hence if the defendants are doing business in Turkey, for example, but the plaintiff has never extended its trade to that country and there is no evidence that it is likely to do so, the plaintiff has not been damaged by the defendants' Turkish business and is not entitled to restrain its continuance or to an accounting for damages and profits with respect to sales made there. See Standard Oil Co. of Maine v. Standard Oil Co. of New York, 1 Cir., 45 F.2d 309, 313; Cotton, L.J., in Orr, Ewing & Co. v. Johnston & Co., 13 Ch.Div. 434, at page 464.

We do not think it desirable for this court to attempt to recast the decree with complete particularity. In so far as it relates to domestic business it is affirmed; also, it is affirmed with respect to business in Cuba, Chile and Nicaragua. With respect to other foreign business the reference to the master should be broadened to enable him to consider the evidence introduced before the district judge, including that relating to trade-mark registration or litigation between the parties in such countries and additional evidence, if offered, and to report to the district court in conformity with this opinion on the proper scope of the injunction as well as on the accounting.

■ Under the terms of the decree the accounting is to start as of June 9, 1937. The appellants urge that it cannot start before the commencement of this action, March 14, 1941, because the plaintiff's goods have not carried the statutory notice of trade-mark registration and the defendants were not notified of infringement until this action was filed. 15 U.S.C.A. § 107. The date of June 9, 1937 is the date on which the old Luft Company's opposition to the Zande Company's application to register the mark "Zande" was decided adversely to the applicant. By its answer in the opposition proceeding, served nearly two years earlier, the Zande Company expressly acknowledged the old company's registrations of the mark "Tangee". We hold that the express admission in the answer and the adverse decision of the patent office are sufficient proof that the Zande Company was duly notified of infringement not later than June 9, 1937. Stark Bros. Nurseries & Orchards Co. v. Stark, 255 U.S. 50, 41 S.Ct. 221, 65 L.Ed. 496, upon which the appellants rely, is not to the contrary. It is true that the registered marks were not assigned to the plaintiff until October 20, 1937 and that the assignment of a trademark, like the assignment of a patent, carries no right to sue for past infringements. Moore v. Marsh, 7 Wall. 515, 522, 19 L.Ed. 37; see Lawrence-Williams Co. v. Societe Enfants Gombault et Cie, 6 Cir., 22 F.2d 512, certiorari denied 276 U.S. 619, 48 S.Ct. 214, 72 L.Ed. 735; and Id., 6 Cir., 52 F.2d 774, certiorari denied 285 U.S. 549, 52 S.Ct. 406, 76 L.Ed. 940. But by the contract of October 4, 1937 the old corporation in effect conveyed to the plaintiff all its assets, which would include existing causes of action

542

for trade-mark infringement. Hence there was no error in ordering the accounting to start on June 9, 1937.

The decree is modified as hereinabove indicated, and in other respects is affirmed. One-half of the appellate costs is awarded the appellants.